# Exhibit C



| | | |
|---|---|---|
| THOMAS TUCCI, JR.<br>*Chairman* | | GREGORY A. TRAMONTOZZI<br>*Executive Director* |
| LUIS A. QUINTANA<br>*Vice Chairman* | | MATTHEW F. MURRAY<br>*Clerk* |
| ELIZABETH CALABRESE<br>JOHN J. COSGROVE<br>JAMES P. DORAN<br>JOSEPH F. ISOLA<br>HECTOR C. LORA<br>BRENDAN MURPHY<br>*Commissioners* | *"Protecting Public Health and the Environment"*<br>600 Wilson Avenue<br>Newark, New Jersey 07105<br>P (973) 466-2915 F (973) 817-5738<br>www.nj.gov/pvsc | MICHAEL D. WITT<br>*General Counsel* |

March 21, 2023

The Honorable Todd Kim
Assistant Attorney General
United States Department of Justice—ENRD
P.O. Box 7611
Washington, DC 20044-7611

*Submitted via US mail and email ([pubcomment-ees.enrd@usdoj.gov](pubcomment-ees.enrd@usdoj.gov))*

  **Re:** *United States v. Alden Leeds, Inc., et al.*
     Civil Action No. 2:22–cv–07326
     D.J. Ref. No. 90–11–3–07683/1

Dear Assistant Attorney General Kim:

  The Passaic Valley Sewerage Commission ("PVSC") submits these comments regarding the proposed consent decree lodged by the Department of Justice on December 16, 2022 (the "Consent Decree"). As background, PVSC is a public agency of the State of New Jersey that operates the fifth-largest wastewater treatment facility in the United States. PVSC's statutorily-defined treatment district encompasses all or parts of 48 municipalities located throughout five counties in northeastern New Jersey, providing service to over 1.5 million residents.

  Despite the vast majority of Potentially Responsible Parties ("PRPs") for the Diamond Alkali Superfund Site (the "Site") being identified by the United States Environmental Protection Agency ("EPA") in the late 1990s, PVSC—along with four of its member municipalities—was not named as a PRP until 2016, two decades later. EPA has indicated on a number of occasions that it expects PVSC and the other public entity PRPs to at-most contribute in-kind services (as opposed to any monetary payment) in order to facilitate Site remedies. Such in-kind contributions could include the provision of public property for dredged sediment processing operations.

  The Consent Decree is premised on a responsibility allocation report. The report was prepared by an expert allocator selected by EPA, with the participation of most of the private party PRPs. The report clearly demonstrates that Occidental Chemical Corporation bears near-exclusive responsibility for the Site, with the removal of dioxin being the primary driver of the remediation. While comparatively small, the share of CERCLA response activity costs being paid by the

Settling Parties is significant and correctly reflects the conclusion under the protocol employed by EPA's expert allocator that Occidental Chemical Corporation bears 99.9% of the responsibility for response costs. It is, thus, difficult to credibly claim that the $150 million (about 8% of the estimated remedial costs for Operable Units 2 and 4 of the Site) being paid by the Settling Parties is below a reasonable amount of their collective share of responsibility.

PVSC's principal concern with the Consent Decree is that it exposes the <u>public</u>, vis-à-vis PVSC and its 48 municipal constituent members which share PVSC's funding obligations (collectively "MCMs"), to catastrophic monetary risk which they cannot satisfy because of their lack of resources.[1] Specifically, in Section VII, para. 13 of the Consent Decree, the United States covenants not to sue or take administrative action against the Settling Defendants under Sections 106 and 107(a) of CERLCA regarding Operable Units 2 and 4 of the Site (with a combined estimated interim remedy cost of about $1.8 billion). Further, the Consent Decree purportedly provides the Settling Parties with contribution protection under Section 113 of CERCLA from contribution claims asserted by non-Settling Parties. *See* Section XI, para. 23.

Given CERCLA's joint and several liability scheme, the combined effect of the United States' covenant not to sue and CERLCA contribution protection would be to shift the joint and several liability risk collectively shouldered by the Settling Parties onto PVSC (and by extension, the taxpayers of its MCMs). In other words, prior to entry of the Consent Decree, the risk that a PRP becomes unable to pay its share of responsibility is spread out among well over 100 parties, including the Settling Parties, which include some of the largest corporations in the country. But the moment the Consent Decree is entered, the risk that was being borne by the Settling Parties would be shifted to PVSC and other non-settling PRPs. And the dollar amount associated with this risk is significant, given the Settling Parties' $150 million payment constitutes a small fraction of total response activity costs for the Site. This risk is exemplified by PVSC and 41 of its MCMs being the vast majority of the parties in the litigation filed by Occidental Chemical Corporation concerning CERCLA Site remediation liability which are not Settling Parties.

This problem could be solved by the United States simply negotiating a consent decree with PVSC and its MCMs whereby PVSC would contribute in-kind services to the Site remedy,

---

[1] The MCMs are City of Bayonne, Township of Belleville, Township of Bloomfield, City of Clifton, Borough of East Newark, City of East Orange, Borough of East Rutherford, City of Garfield, Borough of Glen Ridge, Borough of Haledon, Town of Harrison, City of Jersey City, Township of Kearny, Borough of Lodi, Township of Lyndhurst, Township of Montclair, City of Newark, Borough of North Arlington, Township of North Bergen, Township of Nutley, Township of Orange, City of Passaic, City of Paterson, Borough of Prospect Park, Borough of Rutherford, City of Union City, Borough of Wallington, Borough of Elmwood Park, Borough of Fair Lawn, Borough of Glen Rock, Borough of Hawthorne, Township of Little Falls, Borough of North Haledon, Township of Saddle Brook, Township of South Hackensack, Borough of Totowa, Borough of Woodland Park, Borough of Wood-Ridge, Township of Cedar Grove, City of Elizabeth, Township of Franklin Lakes, City of Hackensack, Borough of Hasbrouck Heights, Township of Hillside, Borough of North Caldwell, Village of Ridgewood, South Orange Village, Township of West Orange.

2

and in turn would receive comparable protections that the Settling Parties are receiving through the Consent Decree.

Other than the problem of PVSC and the MCMs remaining exposed to excessive joint and several liability risk from the absence of its own consent decree, PVSC believes the lodged Consent Decree is fair, reasonable, and consistent with the purposes of CERCLA.

PVSC encourages the United States to promptly negotiate a consent decree with PVSC and its MCMs on a timeline that will permit the Court to enter a consent decree resolving their CERCLA liability for OU2 and OU4 at the same time as the currently lodged Consent Decree.

We appreciate the Department's attention to this matter.

Very truly yours,

Gregory A. Tramontozzi
Executive Director