# Exhibit E

# COFFEY & ASSOCIATES
COUNSELLORS AT LAW
―――
A PROFESSIONAL CORPORATION

| | 310 SOUTH STREET | |
|---|---|---|
| FAX 973-539-4501 | MORRISTOWN, NEW JERSEY 07960 | GREGORY J. COFFEY |
| EMAIL GJC@COFFEYLAW.COM | 973--539-4500 | DIRECT DIAL 973-539-4582 |

March 22, 2023

**VIA ELECTRONIC MAIL (pubcomment-ees.enrd@usdoj.gov)**
Assistant Attorney General
U.S. DOJ-ENRD
P.O. Box 7611
Washington, DC 20044-7611

Re: **United States v. Alden Leeds, Inc., et. al.**
**Civil Action No. 2:22-cv-07326**
**D.J. Ref No. 90-11-3-07683/1**
**Borough of Hasbrouck Heights Comments to Proposed Consent Decree**

Dear Assistant Attorney General:

This firm represents the Borough of Hasbrouck Heights ("Hasbrouck Heights"), a municipality named in the action entitled *Occidental Chemical Corporation v. 21st Century Fox America, Inc., et al.*, Civil Action No. 18-cv-11273-MCA-LDW, in the United States District Court for the District of New Jersey (the "Underlying Action"), but Hasbrouck Heights has not been named on any CERCLA order or directive issued by the United States Environmental Protection Agency ("EPA") or State of New Jersey Department of Environmental Protection ("DEP") related to the site that is the subject of the Underlying Action. We join in the comments made by liaison counsel for the Passaic Valley Sewerage Commission ("PVSC"), but provide further comments herein on the proposed Consent Decree on behalf of Hasbrouck Heights, which we believe apply to other similarly situated municipalities as well. Though we do not have a basis to either object to or endorse the proposed Consent Decree and/or the underlying allocation on which it was based as Hasbrouck Heights was neither invited to participate nor was privy to the allocation process at the time, the nature of the following comments relate to the inequitable circumstance that will ensue as a result of Hasbrouck Heights and other similarly situated municipal entities being left without any protections pursuant to CERCLA in the event the Consent Decree is approved. Indeed, approval of the Consent Decree by the District Court will create a paradox wherein the municipal entities will be left in the Underlying Action with Occidental Chemical Corporation, the primary remedy driver of environmental response costs at the Subject Site. For these reasons and the reasons that follow, we respectfully urge the United States to provide immediate relief to the Hasbrouck Heights and other similarly situated municipal entities from being the "last one standing in a game of musical chairs" against the overwhelmingly culpable Occidental Chemical Corporation.

Assistant Attorney General
March 22, 2023
Page 2

## I. The Unintended and Deleterious Impact of Approval and Entry of Consent Decree on the Borough of Hasbrouck Heights and Similarly Situated Municipalities

We acknowledge that the United States and the EPA maintain the discretion to choose the entities by which it will engage in settlement negotiations with and enter into Consent Decrees. We further recognize that the test for Court approval relates to its terms being found to be fair, reasonable, and consistent with CERCLA's purpose.[1] Even so, the United States' and EPA's consideration for offering a Consent Decree for judicial approval and entry, even when fair and reasonable, must take into account its implications on the remaining potentially responsible parties in the Underlying Action. Here, the effect of entry of the proposed Consent Decree, though it may ultimately be found to be fair and reasonable, creates a circumstance whereby Hasbrouck Heights and the other similarly situated municipalities will find themselves exposed to undue exposure to future liability both in alleged environmental response costs and costs of defense and where Occidental Chemical will clearly focus its sights in the continuing Underlying Action. Such a scenario is not speculation and has been in fact clearly expressed by Occidental Chemical Corporation to be its intention as threatened in the full-page advertisement placed by it in the Washington Post on Sunday, March 5, 2023. (*See, Washington Post Advertisement, dated March 5, 2023, reposted by Occidental Chemical Corporation to its Consent Decree opposition website at* https://www.passaicrivercleanup.com/).

Moreover, the law is well settled that the claims asserted against Hasbrouck Heights and other similarly situated municipalities are contribution claims pursuant to CERCLA §113, where any liability to be imposed would be several and not joint and several.[2] As such, an adjudication of this matter would render a determination of Hasbrouck Heights' fair share of total response costs at the Subject Site.[3]

---

[1] Under CERCLA, a settlement will be approved and entered to the extent it is fair (from both procedural and substantive perspectives), reasonable, and consistent with the statute's purposes. *United States v. Davis*, 261 *F.3d* 1, 23-38 (1st Cir. 2001); *United States v. Akzo Coatings of Am. Inc.*, 949 *F.2d* 1409 (6th Cir. 1991); *United States v. Cannons Eng'g Corp.*, 899 *F.2d* 79 (1st Cir. 1990). Review of such settlements is committed to the discretion of the reviewing court, which is to exercise that discretion in a limited and deferential manner. *See*, *Davis*, 261 *F.3d* at 21; *Cannons Eng'g*, 899 *F.2d* at 84; *Akzo Coatings*, 949 *F.2d* at 1424.

[2] Though the District Court has permitted Occidental Chemical Corporation to maintain a CERCLA §107 cost recovery count in its Amended Complaint at the initial pleading stage in the Underlying Action, the circuit-wide decisional law on point on this issue dictates that any liability that might be assessed against Hasbrouck Heights and other similarly situated municipal entity not the recipient of an enforcement directive or order from either EPA or the State of New Jersey is only several and not joint and several.

[3] Although CERCLA itself does not specifically set forth the factors for determining a party's fair contribution share, decisional law interpreting CERCLA and the legislative history developed during the adoption of the Superfund Amendments and Reauthorization Act ("SARA") have afforded criteria for determining contribution shares in CERCLA cases. *See generally*, *Hatco v. W.R.Grace*, 836 *F. Supp.* 1049, 1090 (D.N.J. 1993) *modified*, 849 *F. Supp.* 987 (D.N.J. 1994) (the court reviewed the following equitable factors applicable to the allocation of liability among defendants: (1) knowledge and acquiescence; (2) degree of care; (3) degree of cooperation with regulatory agencies; (4) mitigation of damages; and (5)

Assistant Attorney General
March 22, 2023
Page 3

Even so, and notwithstanding the "fair share" analysis conducted by courts under CERCLA, to the extent an orphan share is found, such orphan share would be absorbed by all viable responsible parties regardless of liability status as either a joint and several liability party or just a several liability party. In either event, compelling Hasbrouck Heights and other similarly situated municipalities to continue to defend a lawsuit against Occidental Chemical Corporation without the contribution protection afforded by a Consent Decree is manifestly precarious and contrary to well-settled public policy principles.

      **II.**    **Public Policy Principles Dictate that the Borough of Hasbrouck Heights be Included as a Settling Member of a Consent Decree with EPA and Afforded Contribution Protection From Any Further Litigation and Threat of Liability Associated with the Subject Site**.

Although prior case law has determined that municipalities can be held liable as potentially responsible parties under CERCLA, compelling Hasbrouck Heights to continue to defend the Underlying Action against the primary remedy driver in Occidental Chemical Corporation constitutes inequitable treatment, especially where Hasbrouck Heights and other similarly situated municipalities have a constitutional duty to carry out certain functions to the citizenry. Municipalities perform a public service by arranging for sewage disposal services for their residences and are left in a no-win situation. As a pair of commentators observed, "[Municipalities] cannot stop providing services – it is unrealistic and sometimes illegal for them to do so – but by providing these services, municipalities subject themselves to liability under CERCLA." *Joseph M Manko & Madeline H. Cozine*, *The Battle Over Municipal Liability under CERCLA Heats Up: An Analysis of Proposed Congressional Amendments to Superfund,* 5 *Vill Envtl. L.J.* 23, 32 (1994).

Furthermore, because municipalities do not operate for profit, they are ill suited to bear a significant share of the costs of hazardous waste site cleanups. Municipalities, unlike private parties, are unable to absorb substantial cleanup costs by transferring such costs to consumers. While municipalities may be included in the broad net of potentially responsible parties under CERCLA, Congress never intended for taxpayers to fund a significant share of a hazardous site's cleanup. Several scholars have speculated that if municipalities are found to responsible for a significant share of cleanup costs – as in this case – there are only two likely scenarios: 1) in the best case scenario, many municipalities would cut essential services to their communities or raise property taxes if forced to pay a large proportion of response costs; or 2) in the worst case scenario, they would file for

---

financial benefit to the parties); *United States v. Kramer*, 953 *F. Supp*. 592, 597 (D.N.J. 1997) (courts have broad discretion to consider and apply equitable factors to achieve a just and fair allocation among liable parties); *United States v. Colorado & Eastern Railroad Co*., 50 *F.3d* 1530, 1536 (10th Cir. 1995) (citing *Environmental Transp. Sys. v. Ensco, Inc*. 969 *F.2d* 503, 509-509 (6th Cir. 1992) (the court may "consider several factors, a few factors, or only one determining factor … depending on the totality of the circumstances" of the case).

Assistant Attorney General
March 22, 2023
Page 4

bankruptcy."  *G. Nelson Smith, III*, *Trashing the Town and Making It Pay: The Problem with the Municipal Liability Scheme under CERCLA*, 26 *Conn. L.Rev.* 585, 596 (1994).

Initiatives ranging from the Environmental Protection Agency's Municipal Settlement Policy to the proposed but never passed federal Toxic Cleanup Equity and Acceleration Act of 1993 ("TCEAA") have attempted to correct the unfair position that Hasbrouck Heights and other similarly situated municipalities have been placed in when required to subsidize industrial cleanup.  Both initiatives were geared to promote early settlement, reduce litigation costs, and foster an equitable and predictable cost allocation for municipal entities.  Such efforts underscore the intent of the legislature and the executive to distinguish municipalities from other parties to an environmental litigation as well as to refrain from requiring municipalities to shoulder the brunt of a hazardous waste site cleanup.

In this case, and despite repeated efforts on the part of the municipal entities, Hasbrouck Heights not been afforded with the opportunity to explore municipal de minimis settlement initiatives with the United States and the EPA.  The inability to do so is especially perplexing in the case of Hasbrouck Heights who maintains a very narrow and limited nexus to the Subject Site.  Hasbrouck Heights is not itself a member of the PVSC, but rather has been linked to the Passaic River and the Underlying Action via a sewage connection to the neighboring Borough of Lodi which is a member of the PVSC.  In addition, the only portion of the sewage system of Hasbrouck Heights which flows into the sewage system of the Borough of Lodi is located near the westerly boundary of Hasbrouck Heights and is completely independent of the main portion of the sewage system which runs to the Bergen County Utilities Authority.  This independent portion which leads into the sewage system of the Borough of Lodi serves sixty (60) single-family residences and is devoid of any commercial or industrial uses.  Furthermore, prior to World War II, this independent section of Hasbrouck Heights was composed of vacant lots that were zoned for single-family residential use.  Following the conclusion of World War II in or around 1949, this independent section of Hasbrouck Heights was developed with the 60 single-family residences that comprise the area today.

Finally, the record developed in the public nexus documents do not reveal any instance in which Hasbrouck Heights is alleged to have generated wastes to the Subject Site of a character that would disqualify it for de minimis settlement status with the EPA.  As such, by virtue of these undisputed facts and circumstances, and despite its narrow and tenuous nexus to the Subject Site, Hasbrouck Heights finds itself in a particularly vulnerable position in the event the proposed Consent Decree is approved and entered by the Court and it is left with other similarly situated municipalities to continue to defend the Underlying Action against Occidental Chemical Corporation.  Such a paradoxical consequence is contrary to both the intent of CERCLA and the public policy principles previously articulated by both the EPA and courts considering proposed Consent Decrees.

Assistant Attorney General
March 22, 2023
Page 5

      For all of the foregoing reasons, we respectfully urge the United States to provide immediate relief to Hasbrouck Heights and other similarly situated municipal entities in this matter. We look forward to representatives of the United States initiating these discussions now as a means of addressing the obvious inequities and exposures that will ensue after entry of the proposed Consent Decree.

      Thank you for your courtesies and cooperation in this matter.

      Respectfully submitted,

      COFFEY & ASSOCIATES

      */s/ Gregory J. Coffey*

      Gregory J. Coffey

GJC: