# Exhibit G



March 22, 2023

**Via E-mail**

The Honorable Michael S. Regan  
Administrator  
U.S. Environmental Protection Agency  
1200 Pennsylvania Avenue, NW  
Washington, DC 20004

The Honorable Todd Sunhwae Kim  
Assistant Attorney General  
Environment and Natural Resources Division  
U.S. Department of Justice  
950 Pennsylvania Avenue, NW  
Washington, DC 20530-0001

      RE:    *United States v. Alden Leeds, Inc., et al.,*  
             Civil Action No. 2:22–cv–07326, D.J. Ref. No. 90–11–3–07683/1.

Dear Administrator Regan and Assistant Attorney General Kim:

I am a citizen of the State of New Jersey with a residence in Montclair, located in Essex County. I am currently President and Chief Executive of the National Newspaper Publishers Association and am the former Executive Director and CEO of the NAACP, and Alliance for a Superfund Action Partnership (ASAP).

In a 1987 study by the United Church of Christ Commission on Racial Justice, which I supervised and help to lead along with Charles Lee, showed that many toxic waste sites are located disproportionately in minority communities throughout the United States; and I did coined the term "environmental racism".[1] As a New Jersey resident and a co-founder of the Environmental Justice movement, I have a strong personal interest in seeing that the Passaic River is cleaned in a manner that is efficient, effective, and equitable for the people of New Jersey, the communities along this great river, and even for the companies who have misused this river to dump industrial waste.

---

[1] United Church of Christ, *Toxic Wastes and Race In The United States,* 1987, *available at* https://www.ucc.org/wp-content/uploads/2020/12/ToxicWastesRace.pdf (last visited Mar. 21, 2023).

ALCD-PUBCOM_0000181

Hon. Michael S. Regan and Hon. Todd Sunhwae Kim
March 22, 2023
Page 2

Today, there are over 1,200 Superfund sites in the United States.[2] Black Americans are 75 percent more likely than other groups to live near a hazardous waste facility.[3] New Jersey has 115 Superfund sites, over 10 percent of the United States total and more than any other state in the nation.[4] Cognizant of the Passaic River's troubled past, I long for a future with a vibrant, clean river that can be used for many generations to come. I currently have a tremendous respect for your leadership of the EPA and the priority that you have give Environmental Justice across the nation. Honorable Michael Regan, I personally applaud your leadership. I am hoping that you and your colleague over at the U.S. Department of Justice will receive this letter in the interests of environmental justice and equitable fairness to all parties involved, but most importantly for the sake of actually getting the Passaic River finally cleaned up accordingly.

**The current settlement proposed by Region 2 of the Environmental Protection Agency (EPA), however, will be a significant step in the wrong direction for the cleanup of the Passaic River.**

The EPA's proposed settlement requires no actual cleanup work by the settling companies, further delaying the environmental justice that has been decades in waiting. Instead, the EPA appears to be absolving from liability multiple companies with multi-billion-dollar revenues for a tiny fraction of what the EPA estimates it will cost to clean the river. Although EPA estimates the cost of the clean-up to be $1.82 billion, it asks a New Jersey federal court to release these companies from any future liability for only $150 million. It appears that none of these funds will ever be seen by the communities these companies polluted. Instead, all settlement funds will cover EPA's past and future administrative and oversight costs.

**This is simply unjust and inequitable to the New Jersey communities and citizens who have waited far too long to enjoy a clean, healthy river.**

The area where the pollution occurred for more than 150 years is known as "The Ironbound" neighborhood of Newark due to the heavy industry and network of railroads that surround it. The Ironbound neighborhood, and the towns that line the rest of the nine-mile Superfund site is historically multi-ethnic and working-class. It is one of America's most disadvantaged communities and deserves an efficient cleanup process. With the settlement that EPA has proposed, I fear the Ironbound will have to wait even longer for meaningful progress.

---

[2] *See* EPA Superfund: National Priorities List, *available at* https://www.epa.gov/superfund/superfund-national-priorities-list-npl (last visited Mar. 21, 2023).

[3] NCAAP and Clean Air Task Force, *Fumes Across the Fence Line,* Nov. 2017, available at https://cdn.catf.us/wp-content/uploads/2017/11/21092330/catf-rpt-naacp-4.21.pdf (last visited Mar. 21, 2023); *see also* Clark LP, Millet DB, Marshall JD (2014) "National Patterns in Environmental Injustice and Inequality: Outdoor NO2 Air Pollution in the United States." PLoS ONE 9(4): e94431. Available at: https://journals.plos.org/plosone/article?id=10.1371/journal.pone.0094431

[4] *See* EPA National Priorities List Sites – by State, *available at* https://www.epa.gov/superfund/national-priorities-list-npl-sites-state#NJ (last visited Mar. 21, 2023).

Hon. Michael S. Regan and Hon. Todd Sunhwae Kim
March 22, 2023
Page 3

**Nearly thirty years ago, I testified before Congress regarding the Superfund Reform Act of 1994 about reforms necessary to ensure that cleanups were more equitable and expedient.**

For your convenience, I have attached a copy of my written testimony. Unfortunately, many of the urgent reforms I called for in my 1994 Congressional testimony were not implemented. However, I also raised concerns about parts of the proposed Superfund amendment which would have given the EPA authority to allocate liability among multiple parties at Superfund sites. At that time, I predicted "howls of protest" if Congress allowed the EPA "enormous discretion" to allocate liability at the Superfund sites.[5] Indeed, the EPA should be focused exclusively on completing cleanups for the people and communities EPA is obligated to protect – not on deciding who should pay.  I also warned Congress that EPA-led allocations would delay much-needed clean up in disadvantaged communities and prolong, rather than lessen, litigation.

Congress wisely refused to amend the Superfund law to allow the type of EPA-led allocation that was proposed.[6] That function was left where it remains today: solely with the courts, unless parties choose to allocate liability in private proceedings using their private funds. EPA sought allocation authority again in 1999. Once again, Congress, said "no".[7]  Despite Congress' clear refusal to allow the EPA to allocate responsibility at Superfund sites, that is exactly what the EPA has done with this settlement.

**There is another serious problem with EPA's proposed settlement: EPA threatens to take away an important incentive that Congress gave companies to encourage voluntary cleanup.**

Congress granted companies who agree to undertake all or part of a Superfund cleanup, the right to ask courts for assistance to ensure all responsible parties pay their fair share of cleanup costs.[8] This right to seek contribution in private actions—funded by private companies—incentivizes companies to cooperate with EPA so that cleanup efforts progress more quickly. And this structure puts courts—rather than EPA—in the role of allocating responsibility.

Taking away this important incentive will be devastating to future cleanups. No rational company will voluntarily perform cleanups if the EPA can unilaterally deprive that party of the right to ensure all responsible parties pay to clean up the pollution they caused.[9]

---

[5] *Superfund Reform Act of 1994, Hearing on S. 1834 Before the Subcomm. On Superfund, Recycling, and Solid Waste Management of the S. Comm. On Environment and Public Works*, 103rd Cong. (1994)

[6] *See* Superfund Reform Act of 1994, S. 1834, 103rd Cong. (1994) (https://www.congress.gov/bill/103rd-congress/senate-bill/1834); *Superfund Reform Act of 1994, Hearing on S. 1834 Before the Subcomm. On Superfund, Recycling, and Solid Waste Management of the S. Comm. On Environment and Public Works*, 103rd Cong. (1994).

[7] *See* Recycle America's Land Act of 1999, H.R. 1300, 106th Cong. (1999) (https://www.congress.gov/bill/106th-congress/house-bill/1300/all-info?r=724&s=1)

[8] 42 U.S.C. § 9613(f)(1)

[9] March 21, 2023 letter from U.S. Chamber of Commerce to U.S. Environmental Protection Agency and U.S. Dept. of Justice. (https://www.uschamber.com/assets/documents/230321_Comments_CERCLA_EPA_DOJ.pdf)

Hon. Michael S. Regan and Hon. Todd Sunhwae Kim
March 22, 2023
Page 4

**The remediation of the Passaic River is among the largest and most complex cleanups in the history of the Superfund program. Despite that complexity, the EPA should put the public interests first and ensure that the Passaic River and other Superfund sites are remediated swiftly, effectively, and equitably.**

The current, proposed settlement ensures the opposite. Sites will not be cleaned quickly. Instead, law firm profits will soar, as litigation and endless appeals wind through the courts. All the while, New Jersey citizens and small businesses in disadvantaged communities along the Passaic River will continue to suffer.

I said this in my testimony before Congress in 1994, and it is still true today:

> *"In Washington, the talk is of making 'polluters' pay and of 'fair share' allocation. At toxic ground zero, the talk is of one thing: Clean up our neighborhood, do it fast and do it right. Communities want to see clean-up crews and public health professionals, not lawyers, allocators, and allocation committees."*

I welcome the opportunity for a dialogue with both of you to discuss my concerns and share my thoughts on how to accomplish a more expedient and equitable approach to the Passaic River cleanup in New Jersey. Thank you for your consideration.

Sincerely,

*Benjamin F. Chavis*

Dr. Benjamin F. Chavis, Jr.

National Newspaper Publishers Association (NNPA)

Thurgood Marshall Center Trust Building

1816 12th Street NW

Washington, DC 20009

dr.bchavis@nnpa.org 202-905-7613

Hon. Michael S. Regan and Hon. Todd Sunhwae Kim
March 22, 2023
Page 5

ALCD-PUBCOM_0000185