# Exhibit D



Kathy Patrick
Partner
kpatrick@gibbsbruns.com
713.751.5253

November 7, 2018

**BY ELECTRONIC MAIL**

Mr. John Prince
Deputy Director, Emergency and Remedial Response Division
Environmental Protection Agency Region 2
290 Broadway
New York, NY 10007-1866

Mr. Eric Schaaf
Regional Counsel
Environmental Protection Agency EPA Region 2
290 Broadway
New York, NY 10007-1866

Ms. Sara Flanagan
Chief, New Jersey Superfund Branch
Office of Regional Counsel
Environmental Protection Agency Region 2
New York, NY 10007-1866

     Re:    September 2016 Administrative Settlement Agreement and Order on Consent between the United States Environmental Protection Agency and Occidental Chemical Corporation

Dear Mr. Prince, Mr. Schaaf, and Ms. Flanagan:

    I write on behalf of Occidental Chemical Corporation (Occidental) to express Occidental's concern regarding a letter sent on September 11, 2018 by Sara Flanagan, EPA's New Jersey Superfund Branch Chief, to David Erickson of Shook, Hardy & Bacon L.L.P, who is counsel to certain of the Defendants in Occidental's pending CERCLA action in the District of New Jersey.

    We note that while Ms. Flanagan's letter appears to concern contribution and cost recovery claims that are reserved to Occidental under the September 2016 Administrative Settlement Agreement and Order on Consent between Occidental and EPA (the "2016 ASAOC"), the letter was not addressed to Occidental and Occidental did not receive a copy of it until it was forwarded to us later by Kathryn DeLuca of Region 2.

Both the context of the letter, and the way Mr. Erickson has read it, have caused Occidental concern.

In the 2016 ASAOC, Occidental agreed to incur the expenses necessary to design EPA's selected remedy for Operable Unit 2 of the Diamond Alkali Superfund Site. EPA estimated Occidental would incur approximately $165 million to perform this work.[1] But Occidental's exposure to these costs is not capped; it has agreed to perform the work regardless of its costs to do so. Given the risks this contract shifted from the United States and other parties to Occidental, it was essential that the 2016 ASAOC preserve Occidental's right to pursue contribution recoveries from the more than 100 other parties whom EPA has alleged may be responsible for hazardous substances in the Lower Passaic River.[2]

Occidental is the only party that has stepped up to perform the expensive, essential work to design the remedy for OU2. Occidental also provided millions of dollars of funding in the bankruptcy of its indemnitors Maxus Energy Corporation and Tierra Solutions, Inc., to pursue their parent companies, and other responsible parties, so that parties responsible for the presence of hazardous substances in the Passaic River pays their fair shares of clean-up costs. Occidental undertook these efforts, in part, because it knew it had the right to pursue claims under CERCLA Sections 107 and 113 against other responsible parties to recover the response costs Occidental incurred to design the OU2 remedy, as well as other response costs it has incurred and will incur in the future at OU2 and in other operable units of the Site.

More recently, and again *alone* among the responsible parties, Occidental has been working closely with EPA, the Passaic Valley Sewerage Commission and other governmental entities to negotiate an agreement under which Occidental will agree to design and construct a sediment processing facility for the selected OU2 remedy with land and other infrastructure and services to be provided by the PVSC and the local governments. The costs of this work to Occidental are expected to exceed $160 million.

In Ms. Flanagan's September 11 letter to Mr. Erickson, who is counsel for certain Defendants in the CERCLA action, she stated it was EPA's intention to use the "allocation process" implemented by David Batson, an EPA consultant, to attempt to "negotiate a remedial action consent decree with the major parties to implement and pay for the OU2 remedy, and to identify parties that may be eligible for a cash out settlement *for OU2*."[3] EPA's letter was silent

---

[1] This estimate was provided by EPA in a press release and is not reflected in the EPA's Record of Decision.
[2] *See* 2016 ASAOC at ¶ 101 ("nothing in this Settlement Agreement constitutes a satisfaction of, or release from, any claim or cause of action against…any person not a party to this Settlement Agreement, for any liability such person may have under CERCLA…."); *see also* ¶ 103 ("…each of the Parties expressly reserves any and all rights (including, but not limited to, claims pursuant to Section 113 of CERCLA), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to OU2 for the Site against any person not a Party hereto.").
[3] *See* Letter from S. Flanagan, Chief, New Jersey Superfund Branch, to D. Erickson, September 11, 2001 (emphasis added).

Messrs. Prince, Schaaf,
and Ms. Flanagan
November 7, 2018
Page 3

on whether EPA intended to use the Batson process to protect the Defendants from Occidental's claims for costs Occidental has incurred under the 2016 ASAOC.

Mr. Erickson's clients, however, have since argued to the Court that EPA's letter confirms it is EPA's position that the Batson process "is *intended* to result in settlements with EPA that would result in contribution protection, *including from Occidental's claims*."[4] In addition, in a later brief in support of a Motion for Protective Order, Defendants argued that "[t]he EPA Allocation [] may result in Participating Allocation Parties receiving *complete* contribution protection, *including from Occidental's claims here*" in Occidental's CERCLA action.[5]

Occidental hopes the Defendants have read more into Ms. Flanagan's letter than EPA intended. From Occidental's perspective, the far more sensible reading of Ms. Flanagan's letter is the one that is consistent with both CERCLA and the terms of the 2016 ASAOC: namely, that while EPA may intend to provide contribution protection to the Defendants for costs incurred by the United States, it will not purport to bar contribution claims for costs incurred by Occidental, because those claims are reserved to Occidental under CERCLA and the 2016 ASAOC. If Occidental is mistaken, and Mr. Erickson's statement of EPA's intentions is correct, then please consider the following:

First, EPA has never informed Occidental that the Batson Process was intended to or would bar Occidental's rights to recover costs Occidental itself has incurred to design the remedy. Even assuming EPA had authority to do it, such an action by EPA would be unreasonable, arbitrary and capricious, given the extent of Occidental's cooperation with EPA, the Defendants' obvious responsibility for hazardous substances in the Passaic River, and the Defendants' utter lack of any cooperation on efforts to design and implement the remedy for OU2.

Second, Occidental does not believe EPA has that authority under CERCLA. By definition, Occidental's claims for contribution are for costs incurred by Occidental; they are not for a "liability to the United States" nor are they costs incurred "by the United States Government."[6] By the plain language of Sections 113 and 122 of CERCLA, Congress did not

---

[4] *See* Letter from D. Erickson to Magistrate Judge Dickson, October 4, 2018 at 3 (emphasis added), attached as Ex. "A."

[5] The "Small Parties Group" Defendants' Brief in Support of a Protective Order for the EPA Allocation and Mediated Settlement Process, *Occidental Chemical Corp. v. 21st Century Fox, et. al,* Case No. 2:18-cv-11273, Dkt. 271, at 3 n.3.

[6] CERCLA Section 122(g) is the only provision of CERCLA that plainly allows EPA to bar private parties' claims for contribution, but that authority is limited to *de minimis* settlements. No other provision of CERCLA, including CERCLA Section 113(f)(2) or Section 122(h), contains language that expressly permits EPA to bar private parties' contribution claims, as distinct from contribution claims for "costs incurred by the United States" (Section 122(h) or contribution claims for "liability to the United States" (Section 122(f)(2)). *See e.g. United States* v. *Hardage*, 750 F. Supp. 1460, 1493 (W.D. Okla. 1990) ("CERCLA provides the United States with no authority to settle private party response cost claims."); *Akzo Coating of Am., Inc.* v. *Am. Renovating*, 842 F. Supp. 267, 271 (E.D. Mich. 1993) ("If defendants were permitted to settle with the government for part of the cleanup costs of a site, and then become immune from suit for contribution by private entities who paid for other cleanup costs, it would defeat the policy of

Messrs. Prince, Schaaf,<br>
and Ms. Flanagan<br>
November 7, 2018<br>
Page 4

give EPA the prerogative to divest Occidental of its rights to seek recovery of the costs Occidental itself has alone expended as the sole performing party on the remedial design; to the contrary, Congress specifically afforded Occidental the exclusive legal right to sue to recover them.

Third, Occidental intends to protect its rights to recover the costs it has expended—and those it will expend—from the parties who have refused to bear their fair share of the costs to design the remedy to respond to the contamination at OU2. Courts scrutinize closely whether the "matters addressed" in a settlement exceed those for which EPA is permitted to offer relief. EPA could force Occidental to urge the court to do so here if EPA (and interested settling parties) purport to define "matters addressed" in a manner that would limit Occidental's rights to pursue recoveries of response costs that Occidental—and Occidental *alone*—has incurred. Occidental intends to test in court the legality and fairness of any consent decree or administrative settlement between EPA and a defendant Occidental named in its CERCLA action, if the settlement purports to compromise or inhibit Occidental's rights to seek contribution.

Finally, any purported release by EPA of *Occidental's* claims, in connection with the EPA's settlement of its own claims, would not only violate CERCLA, but would also constitute an unconstitutional taking of Occidental's property rights, including Occidental's statutory and common law rights to seek contribution for its own privately-incurred costs. If EPA has already purported to settle contribution claims for costs Occidental incurred on the Remedial Design, the monies collected must go to Occidental, not to the United States Treasury, because Occidental is the party that stepped up and agreed to incur *all* those costs.

In light of the position taken by the Defendants, Occidental requests a clear answer about EPA's intentions, before Occidental agrees to undertake an additional obligation of $160 million to design and build the sediment processing facility. We would like an opportunity to meet promptly to discuss these issues.

Sincerely,

*/s/ Kathy Patrick/*

Kathy Patrick
Counsel to Occidental Chemical Corporation

Cc:   Ms. Marcia Backus
      Ms. Melissa Hunt
      Mr. Frank Parigi
      Mr. Mike Anderson
      Mr. Larry Silver

---

CERCLA."); *Transtech Indus., Inc.* v. *A7Z Septic Clean*, 798 F.Supp. 1079 (D.N.J. 1992) ("Section 113(f)(2) prevents parties from having to pay twice for the same cleanups. Thus, defendant is immune from further liability for the response costs incurred by the United States during the time … covered by the consent decree …").